IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Emery J. Yost, <br><br>   Plaintiff, <br> v. <br><br> Chicago Park District, a body politic, <br><br>   Defendant. | No. 13 C 8162 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Emery Yost filed this action against the Chicago Park District alleging that he suffered employment discrimination based on his age and sex, and retaliation while employed by the Park District in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. The Park District now moves for summary judgment. For the following reasons, the Court grants the Park District's Motion for Summary Judgment.

### I. BACKGROUND

The following facts are undisputed unless otherwise noted. The Chicago Park District is a local public entity that manages over 400 parks and playlots spread throughout Chicago. (Def. 56.1, ¶ 1; Pl. 56.1 Resp., ¶ 1). In 2011, the Park District had 1,440 full-time employees, 1,277 part-time employees, and 3,685 seasonal employees. (Def. 56.1, ¶ 3; Pl. 56.1 Resp., ¶ 3). At smaller playground or park facilities, the Park District hires a playground supervisor to "plan, coordinate, and supervise a recreation and leisure program." (Def. 56.1, ¶ 4; Pl. 56.1 Resp., ¶ 4). The playground supervisor also serves as "the administrative supervisor for instructional and maintenance staff." (*Id.*) The minimum qualifications for a playground supervisor are:

1

> Bachelor's degree in Business, Property Management, Public Administration, Recreation and Leisure or comparable major is required. There is a temporary waiver for the requirement of a Bachelor's Degree for this position for a period of six (6) years for applicants that have been employed by the Park District as an Instructor for at least six (6) years. (Def. 56.1, ¶ 18; Pl. 56.1 Resp., ¶ 18).

In or about June 2011, the Park District opened playground supervisor positions at Rogers, Hollywood, and Gladstone Playgrounds. (Def. 56.1, ¶ 38; Pl. 56.1 Resp., ¶ 38).

Generally, the Park District's procedure is to post bid notices of these vacancies and attempt to fill them by promoting within the ranks of current Park District employees—though it can also hire externally. (Def. 56.1, ¶ 8; Pl. 56.1 Resp., ¶ 8). After the Park District posts the notice of the bid opportunity, the Human Resources Department goes through a two-stage evaluation process. (Def. 56.1, ¶ 11; Pl. 56.1 Resp., ¶ 11). It first determines which applicants meet the minimum requirements for the position and arranges interviews with those applicants. (*Id.*) Then, each interview is conducted by at least one person from the H.R. Department and one person from the Park District that has specific knowledge about the job. (Def. 56.1, ¶ 12; Pl. 56.1 Resp., ¶ 12). Each interviewer independently completes an "Interview Rating Form" based on the candidate's written materials and interview. (Def. 56.1, ¶ 16; Pl. 56.1 Resp., ¶ 16). The numeric ratings from those forms are averaged to get a final numeric score for each candidate and the candidate with the highest score is offered the position. (Def. 56.1, ¶ 16-17; Pl. 56.1 Resp., ¶ 16-17).

The same procedure was followed in this case. After Park District employees were invited to bid on the three supervisory openings at Gladstone, Hollywood, and Rogers Playground, the H.R. Department identified 34 people to interview because they met the minimum qualifications identified in the bid application. (Def. 56.1, ¶ 39; Pl. 56.1 Resp., ¶ 39). All 34 interviews were conducted by Patrick Townsend and Mary Saieva. (Def. 56.1, ¶ 40; Pl.

56.1 Resp., ¶ 40). Townsend was the Region Manager overseeing Gladstone Park and Saieva was an H.R. Analyst with interviewing experience. (Def. 56.1, ¶ 35-36; Pl. 56.1 Resp., ¶ 35-36).

After reviewing each applicant's materials and interviewing each candidate for about thirty minutes with the same interview questions, Townsend and Saieva independently completed their Interview Rating Forms. (Def. 56.1, ¶ 40; Pl. 56.1 Resp., ¶ 40). They averaged their numeric scores and then ranked the candidates accordingly. (*Id.*) Townsend and Saieva awarded Plaintiff Emery Yost an average score of 2.5 (out of a possible 4.0). (Def. 56.1, ¶ 48; Pl. 56.1 Resp., ¶ 48). Eighteen candidates scored above Yost and four candidates scored the same as him. (*Id.*) The candidate that was ultimately offered the position at Gladstone was a 29-year old female named Carrie Morrissey who received an average score of 3.17. (Def. 56.1, ¶ 46; Pl. 56.1 Resp., ¶ 46). Both Townsend and Saieva found that Morrissey was more qualified for the position than Yost. (*See* Def. 56.1, ¶ 53; Pl. 56.1 Resp., ¶ 53). Morrissey accepted the position as Playground Supervisor for Gladstone Playground and this lawsuit followed. (Def. 56.1, ¶ 57; Pl. 56.1 Resp., ¶ 57).

### A. Yost's Qualifications

At the time of his interview in 2011, Yost was 47 years old and had worked as a Music Instructor for the Chicago Park District since 1989. (Def. 56.1, ¶ 18; Pl. 56.1 Resp., ¶ 18). Though Yost has always been a Music Instructor for the Park District, he has also worked as a camp supervisor, youth activity organizer, and supervisor of other programs. (Def. 56.1, ¶ 18-19; Pl. 56.1 Resp., ¶ 18-19). He has experience with "a variety of ages and with athletics, as he was facilitating or teaching Sports for young kids" at the time of bidding on this position. (Pl. 56.1 Stmt. of Add'l Facts, ¶ 9). He was also "conducting or teaching in the Moms Pops Tots program, and the preschool (early childhood) program" at the time of bidding. (Pl. 56.1 Stmt. of Add'l

3

Facts, ¶ 8). Outside the Park District, Yost has taught music at Columbia College and been involved in real estate. (Def. 56.1, ¶ 18; Pl. 56.1 Resp., ¶ 18). He has never, however, organized basketball leagues, taught gymnastics, organized lacrosse leagues, organized flag football leagues, or organized a dodgeball tournament. (Def. 56.1, ¶ 20; Pl. 56.1 Resp., ¶ 20).

**B. Morrissey's Qualifications**

At the time of her interview, Morrissey was 29 years old. (Def. 56.1, ¶ 46; Pl. 56.1 Resp., ¶ 46). Though she did not have a college degree at the time of her interview, Morrissey was "exposed to a variety of recreational activities and age groups, had served as a day camp director, was studying a directly relevant undergraduate degree, and had an extensive knowledge of park procedures." (Def. 56.1, ¶ 50; Pl. 56.1 Resp., ¶ 50). Morrissey was a Physical Instructor at various parks in the Park District from 2001 to the time of her interview in 2011. (Def. 56.1, ¶ 46; Pl. 56.1 Resp., ¶ 46). Her first position with the Park District was as a Park Kids and Recreation Leader at Chopin, Merrimac, and Portage Parks. (*Id.*)

**C. Yost's Discrimination and Retaliation Charges with the EEOC and IDHR**

After the Park District failed to promote Yost to the Gladstone supervisor position, he filed age and sex discrimination, as well as retaliation charges against the Park District with the EEOC and IDHR. (*See* Compl., Ex. 1). Yost claimed that the Park District did not promote him to the supervisory position because of his age and sex, and in retaliation for the employment discrimination charges he filed against the Park District in May 2010 and January 2011. (*Id.*) The EEOC issued a Dismissal and Notice of Rights letter on August 13, 2013. (*Id.*) Yost alleges—and the Park District does not dispute—that he received the EEOC letter on August 16, 2013, (*id.* ¶ 14), and he timely filed this suit within 90 days of receiving the EEOC letter. *See* 42 U.S.C. § 2000e-5(f)(1).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks and citation omitted). Because Yost bears the ultimate burden of persuasion, the Park District's summary judgment burden "may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support [Yost's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'" *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). Although the nonmovant does not need to "depose her own witnesses or produce evidence in a form that would be admissible at trial," she must "go beyond the pleadings…to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Id.* at 1168-69 (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. Sex and Age Discrimination

Employment discrimination claims brought under Title VII or the ADEA may be proven using either the "direct" or "indirect" methods of proof. *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 876 (7th Cir. 2014). In this case, Yost is proceeding exclusively under the "indirect method," conceding in his response brief that he has no direct evidence of age or sex discrimination. (Dkt. No. 33 at 4). Under the indirect method of proof, a discrimination plaintiff

in the "failure-to-promote context" must show that: (1) he belongs to a protected class; (2) applied for and was qualified for the position or promotion sought; (3) was rejected for that position or promotion; and (4) similarly-situated employees outside the protected class received more favorable treatment than he did. *Ripberger*, 773 F.3d at 879; *Grayson v. City of Chicago*, 317 F.3d 745, 748-49 (7th Cir. 2003); *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004).

Generally, if the discrimination plaintiff makes his "prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for its action. If the defendant does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is pretext for discrimination." *Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (quoting *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998)). However, where a plaintiff does not meet his burden of showing that a defendant's explanations are merely a pretext for discrimination, the district court need not decide whether the plaintiff also established a prima facie case. *See Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990); *see also Adams*, 742 F.3d at 735 (observing that the fourth element of the prima facie case often merges with the question of pretext).

In this case, the parties agree that the first three elements are satisfied for Yost's sex and age discrimination claims. (*See* Dkt. No. 23 at 7). Because Yost's discrimination claims hinge on the Park District's legitimate reason for not promoting Yost, the Court begins by resolving the issue of pretext. *See, e.g., Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (evaluating pretext before existence of prima facie case of discrimination).

To avoid summary judgment on his discrimination claims, Yost must show by a preponderance of the evidence that the Park District's proffered reason for not promoting him (*i.e.* that Morrissey was a more qualified candidate than him) is pretextual. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006). To establish a genuine issue of material fact regarding pretext, the plaintiff "must show that '1) it is more likely a discriminatory reason motivated the employer than the proffered non-discriminatory reason or 2) that an employer's explanation is not credible.' " *Id.* (quoting *Hudson*, 375 F.3d at 561). The plaintiff must "specifically refute facts which allegedly support the employer's proffered reasons." *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 845 (7th Cir.1996) (citation omitted) (emphasis omitted). Conclusory assertions about a decision maker's prejudice are insufficient to establish pretext. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1007 (7th Cir. 2002).

The Park District claims a legitimate, non-discriminatory reason for promoting Morrissey, a 29-year old white female, instead of Yost—namely, that Morrissey was more qualified for the position than Yost. To demonstrate pretext of discrimination, Yost sets forth two main pieces of support: that he was more qualified for the position than Morrissey and that there has never been a male supervisor at Gladstone. (*See* Dkt No. 33, at 3). These statements, however, are belied by the facts in the record and are insufficient to defeat summary judgment.

First, the Court cannot infer pretext based on the difference in credentials between Yost and Morrissey. Yost makes much of the fact that Morrissey did not have a college degree at the time of the interview, but that was not a requirement for the supervisory position at Gladstone. Morrissey provided a more detailed application for the Gladstone supervisor position than Yost did. Relative to Yost's application, Morrissey included more ideas about bringing new patrons to the parks; listed more sports leagues she had coached; listed in much more detail the experience

she had scheduling leagues and tournaments; and listed more ideas to market programs at her Park District location. Townsend noted that Morrissey had a "solid ECR [early childhood recreation] background" and that her "various certificates support[ed] wellness initiative[s]" at the Park District. He found that she understood the position and was "highly motived to lead and teach." He also found her education supported work in the field and that her attitude that she would "work to have [the] park clean and [have a] friendly appearance" was positive for the position. The other evaluator similarly found Morrissey more qualified for the position than Yost.

The evaluators found that although Yost had a basic understanding of the position, he needed more experience in different types of programming and working with Advisory Councils. Each interviewer noted that Yost failed to answer one or more of his/her questions. Townsend noted "that Yost was very intelligent, but had to 'broaden his horizons in working with staff [and the] public.' " Yost claims that he "possessed superior qualifications [for the position compared with Morrissey]…based upon [his] comparative experience, well-roundedness, and educational background," but these resounding self-endorsements are insufficient to rebut an employer's negative assessment of his ability. *See Sublett*, 463 F.3d at 740 (internal quotation and citation omitted); *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (plaintiffs' affidavits that their ratings indicated they should have been chosen for a position are "self-serving and add nothing to the ultimate issue of pretext"). Even viewing the evidence in the light most favorable to him, Yost has failed to show that his credentials were superior to those of Morrissey such that no reasonable person could have chosen Morrissey over him for the supervisor position at Gladstone. *See Millbrook*, 280 F.3d at 1180-81 (internal quotations and citations omitted) ("the plaintiff's credentials would have to be so superior to the credentials of the person selected for

8

the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."). Several of the evaluation criteria may have been subjective, but there is no evidence that these criteria were a "mask for discrimination." *See id*. at 1176.

This Court "does not sit as a super personnel department to review an employer's business decisions." *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000). Whether the Park District would have been wiser to promote Yost instead of Morrissey because he had a college degree or more years of experience is not for this Court to decide. "In fact, it is not even the court's concern than an employer may be wrong about its employee's performance, or be too hard on its employee." *Id*. This Court's only concern is whether the reason provided by the Park District for hiring Morrissey instead of Yost is a lie and there is nothing in the record indicating it was. *See Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered").

That there has never been a male supervisor at Gladstone and that Morrissey is younger than Yost similarly does nothing to bolster his claim of pretext. Merely presenting these numbers without additional context (*e.g.* the relevant time period, the number of positions available during that time period, the number and age/sex of candidates applying during that timeframe, and the candidates' relative qualifications, *etc*.) is "next to worthless." *Millbrook*, 280 F.3d at 1177 (internal quotation marks omitted) (citing *Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir.1996); *Odom v. Frank*, 3 F.3d 839, 849 (5th Cir.1993) (raw data of age, race and location of persons promoted from 1980–1993, "without more, is not competent to prove anything")). Of the more than two dozen candidates that interviewed for the Gladstone supervisory position, three

out of the top five high-scoring candidates were men—including the candidate with the highest score. Several of the top-scoring candidates were also relatively close to Yost's age—including the top scoring candidate, Ariel Hernandez, who was 44 years old at the time of his interview. Arguing that Yost was given artificially low scores because of his sex or age is not only speculative: it is defied by the number of men and similarly-aged candidates ranked above him. *See, e.g., Ripberger*, 773 F.3d at 881 ("Any inference of age discrimination is further undercut by the fact that of the six employees Corizon hired at Pendleton, three were relatively close to Ripberger's age…"); *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir. 2001) ("glass ceiling" argument based on sex "would require more than a bare recitation of the numbers of males and females in various positions."). Yost has not provided evidence from which a reasonable jury could find that the Park District's articulated legitimate, nondiscriminatory reason for promoting Morrissey over him was a pretext and his claims for discrimination fail. *See Steinhauer v. DeGolier*, 359 F.3d 481, 488 (7th Cir. 2004) (affirming summary judgment against a plaintiff where plaintiff failed to present sufficient evidence that would allow a reasonable jury to find that the defendant).

### B. Retaliation

Retaliation claims brought under Title VII may also be proven using either the "direct" or "indirect" methods of proof. *Andrews*, 743 F.3d at 234. In this case, Yost is proceeding exclusively under the "indirect method," admitting in his response brief that he has no direct evidence of retaliation. (Dkt. No. 33 at 4). Under the indirect method of proof, a retaliation plaintiff in the "failure-to-promote context" must show that: (1) he engaged in statutorily protected activity; (2) he applied for and was qualified for the position sought; (3) he was rejected for that position; and (4) the employer granted the promotion to someone else who did

not engage in statutorily protected activity and who was not better qualified for the position than the plaintiff. *Burks v. Union Pacific R. Co.*, 793 F.3d 694, 700 (7th Cir. 2015).

If the retaliation plaintiff "establishes a prima facie case under the indirect method, a presumption of retaliation is triggered and the burden shifts to the employer to articulate some legitimate, nonretaliatory reason for its action. When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Harden v. Marion County Sheriff's Dept.*, 2015 WL 5015633, at *3 (7th Cir. Aug. 25, 2015) (internal quotation marks and citation omitted).

In this case, the Park District acknowledges that the first three elements are satisfied: Yost engaged in a statutorily protect activity when he filed the subject EEOC and IDHR discrimination charges; he applied and was qualified for the Playground Supervisor position at Gladstone Park; and he was rejected for that position. (*See* Dkt. No. 23 at 7, 10). Because Yost's retaliation claim focuses on the Park District's legitimate reason for not promoting him, the Court again begins by resolving the issue of pretext. *See Harden*, 2015 WL 5015633, at *8 (internal citation omitted) ("Where pretext is absent, the court need not 'march through' the entire process for showing retaliation under the indirect method.").

As with his discrimination claims, Yost bears the burden of proving that the Park District's stated reason for not promoting him—that he was less qualified for the promotion than Morrissey—was mere pretext for retaliating against him. *Atanus v. Perry*, 520 F.3d 662, 677 (7th Cir. 2008). The focus of the inquiry remains whether the employer's reasons were "honestly," even if mistakenly, held. *Hollywood v. Lucent Techs.*, 323 F.3d 524, 531 (7th Cir. 2003). In support of his retaliation claim, Yost argues that although "no one in Defendant's employ

11

directly states that they are engaged in retaliation against him…they will say 'there is a good Yost, and a bad Yost,' referring pejoratively to Plaintiff in contrast to his brother, John Yost, who is also employed by Defendant." (Pl. 56.1 Stmt. of Add'l Facts, ¶ 1). This statement, however, is insufficient to demonstrate pretext for retaliation. Yost has presented no evidence of who made this statement, to whom, or in what context. The Court does not know whether the individuals interviewing Yost made this statement, heard this statement, or should have been aware of this statement. More importantly, even assuming this statement were made by Park District employees and viewing all other facts in the light most favorable to Yost, the record is inadequate to successfully challenge the Park District's belief that Yost was less qualified for this particular position than Morrissey.

The Park District refused to promote Yost, not because he filed employment discrimination charges against the Park District in May 2010 and January 2011, but because it found him less qualified for the position than Morrissey. Yost conceded during his deposition that he did not know what Morrissey's qualifications for the position were and he has presented no other evidence disputing her qualifications. On the contrary, as previously discussed, the record indicates that both Park District interviewers found Morrissey's written materials more complete than Yost's; commented that Yost failed to answer one or more of his/her questions during the interview; and, generally, found Morrissey to be a better fit for the position than Yost.

This Court cannot rely on stories that are, at best, anecdotal to make a finding of pretext. *See Hague v. Thompson Distribution Co.*, 436 F.3d 816, 829 (7th Cir. 2006) (noting in its pretext analysis that anecdotal evidence was insufficient to prove discrimination). It is not enough for Yost to simply assert that the reasons for which he was denied promotion were untrue: he must cite evidence that demonstrates that the Park District did not honestly believe that the reasons

were true. *See Roberts v. Separators, Inc.*, 172 F.3d 448, 453 (7th Cir. 1999). For the foregoing reasons, no reasonable jury could find that the Park District's conduct was pretext for retaliation and his retaliation claim fails.

## **CONCLUSION**

For the reasons stated above, the Defendant's Motion for Summary Judgment [22] and [23] is granted in its entirety and final judgment is entered in favor of Defendant.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 14, 2015